**UNITED STATED BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

U.S. BANKRUPTCY COURT
FILED
TRENTON, NJ
2018 FEB 23 P 12: 18
JEANNE A. NAUGHTON
BY: L. Sel
DEPUTY CLERK

-----------------------------------------------------X

In the Matter of:

**EDWARD G PETRAGLIA,**

*Pro se,*

Debtor/Plaintiff

**v.**

**GREGORY J. TENCZA,**

Defendant

-----------------------------------------------------X

**Case Number: 1813057 (KCF)**

Adversary No. ____________

**Judge: Hon. Kathryn C. Ferguson,**
**Chief Judge**

**VERIFIED COMPLAINT**

Edward G. Petraglia, the above-named debtor and plaintiff (Plaintiff), appearing *pro se*, alleges for his Verified Complaint against Gregory J. Tencza, the above-named Defendant, as follows:

## NATURE OF THE ACTION AND PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

1. This action seeks an Order of the Court enjoining Defendant Gregory J. Tencza and his attorney, Andrew Sobel of the New Jersey law firm, Sobel Han, LLP, to cease and desist from currently ongoing efforts by Defendant and/or on Defendant's behalf, as well as enjoining any and all future efforts by Defendant and/or on Defendant's behalf, to enforce a certain Writ of Possession previously entered in the Superior Court of the State of New Jersey, Law Division, on November 3, 2018.

2. The Writ that Defendant seeks to enforce directs the Monmouth County Sheriff to seize Plaintiff's home of 23 years located in the same county, at the address: 314 Atlantic Avenue, Spring Lake, NJ 07762, by means of physical eviction. However, because Plaintiff on February 16, 2018 filed a Petition for Reorganization under Title 11 of the U.S. Code, Section

301 (11 U.S.C. §301) and pursuant to Chapter 13 of the same Title, any and all actions to enforce that Writ are stayed by operation of 11 U.S.C. §362(a), the provisions of which automatically went into effect upon the filing of the aforementioned Petition.

3. Seizure of Plaintiff's home without relief from the stay by this Court would constitute an *"enforcement, against... property of the estate, of a judgment obtained before the commencement of the case under [Title11,]"* and thus a violation of 11 U.S.C. §362(a)(2), as quoted.

4. Although Defendant's attempts to take possession of the property so far have not been successful, those attempts have come as close as the front door lock to Plaintiff's house, and the Defendant's failure has not been for dint of effort on his part, because, at present, he is party to no fewer than three (3) separate legal actions, none of which is in Bankruptcy Court, where he persists in asserting his absolute "right" to take possession. The efforts come notwithstanding Defendant's actual knowledge, at least at this point, that a Chapter 13 Petition has been filed and that, accordingly, there is a stay imposed under Section 362(a)(2).

5. Upon information and belief, at no time has Defendant attempted to seek relief of any kind from this Court. Upon further information and belief, this notably includes the absence of any request by Defendant for relief from the stay under subsection (d) of Section 362. To the contrary, Defendant verbally has told Plaintiff that, in his opinion, the stay does not apply to the property he seeks to take. Moreover, through his counsel, Defendant in fact actually requested at a hearing before the same superior court that issued the Writ to disregard Section 362(a) as being inapplicable to his efforts to take possession of the property. In that proceeding, which took place on the afternoon of February 16, the attorney representing Plaintiff in that matter submitted to the court in response to Defendant's argument that only a Bankruptcy Court has jurisdiction to entertain Defendant's "inapplicability" argument. That court reserved decision on February 16. However, on February 21, the Court issued an order stating its conclusion that it has no jurisdiction of the matter because Plaintiff's filing under Chapter 13 stays eviction.

6. Because Defendant by his actions and statements evidently refuses to acknowledge that his arguments, if any, in respect of the stay must in all circumstances be brought before this Court and before no other, Plaintiff submits that, without an injunction, Defendant is unlikely to cease or desist voluntarily. This is important, notwithstanding the fact that, despite the stay

under Section 362(a)(2) and a separate new Jersey Appellate Division stay that Plaintiff believes also is in place, Plaintiff inevitably will be forced at some point again, as he already has been forced in the New Jersey superior court, to continue spending money trying to protect the property as he carries on expensive, *albeit* unnecessary, fights with the Defendant on multiple fronts before multiple courts having no jurisdiction to decide the issue.

7. Stated another way, if Defendant, despite his failure yesterday in the superior court, chooses to take his arguments now to the Appellate Division, this notwithstanding the state court's clear lack of jurisdiction, Plaintiff will continue to incur additional legal expenses for no reason, because, among the many things in this matter that are clear, what seems clearest of all is Defendant's determination that the one place he will not go voluntarily is to this Court.

8. For this reason, Plaintiff respectfully asks for the relief herein sought.

## JURISDICTION (SUBJECT MATTER AND PERSONAL) AND VENUE

9. The district courts, including this Bankruptcy Court, have original and exclusive subject matter jurisdiction under Title 11 of the United States Code, and thus have exclusive jurisdiction over any issue involving a stay under Section 362(a) of that same Title.

10. Plaintiff and Defendant are both residents of Monmouth County, New Jersey. Accordingly. this Court has personal jurisdiction over the parties.

11. Venue in the District of New Jersey and, in particular, before this Court, sitting in Trenton, New Jersey, is proper as well, because Plaintiff's Petition was filed before this same Court, and because both the property and the parties are in this District.

## FACTS

12. Although the bare minimum of facts needed to support this Complaint are: (a) the filing Plaintiff's Chapter 13 Petition; and (b) Defendant's attempts nevertheless to disregard on his own initiative the stay imposed by Section 362(a)(2) as a result of the filing, additional facts nevertheless are provided herein for three reasons.

13. Firstly, the additional facts are to provide the Court with context and substance, so as to facilitate the Court's understanding of the relevant issues surrounding the subject property that are being litigated at this time in various related proceedings elsewere.

14. Secondly, the additional facts are provided to illuminate, on the basis of Defendant's *own* verbal statements, that which Plaintiff believes the Defendant's untenable position to be in choosing unilaterally to ignore the stay, as well as this Court's exclusive jurisdiction.

15. Thirdly, the additional facts are offered because Plaintiff believes the circumstances surrounding the sheriff's sale that gave rise to Defendant's quest to take possession of the property at all costs may, in due course, form a legitimate basis for challenge in this case by Plaintiff, or else at least an inquiry by this Court, into whether Plaintiff's assets and liabilities were improperly impacted by a wrongful foreclosure and/or by a wrongfully conducted sheriff's sale, or by acts in the course of either effectively constituting fraud, not only on Plaintiff, but now also on the Debtor/Plaintiff's creditors – since those acts may have been responsible for causing Plaintiff's assets to be substantially diminished at the same time that his debts were substantially being increased by reason of the same acts.

16. This action arises in connection with the Petition for Reorganization filed on February 16, 2018 by the Debtor (i.e., Plaintiff), acting *pro se,* under Title 11 of the U.S. Code, Section 301 (11 U.S.C. §301) and pursuant to Chapter 13 of the same Title.

17. The Petition was filed on an emergency basis, i.e., *with* filing fee, certificate of credit counseling, and several other documents as required under Bankruptcy Rule 1007, but initially without certain specific documents, as to which Plaintiff/Debtor is advised by the clerk that he is permitted to file later, within fourteen (14) days, pursuant to Rule 1007(c) of the Federal Rules of Bankruptcy Procedure.

18, The nature of the emergency above referenced that compelled Plaintiff on February 16 to file what he understands is a valid, *albeit* incomplete Petition on short notice was his receipt from the Monmouth County, New Jersey Sheriff of a notice scheduling his eviction for February 16, 2018 at 11:30 am.

19. Both at the time the notice was received, as well as presently, it was and continues to be Plaintiff's belief that the notice is improper and invalid, because Plaintiff's understanding is

that the underlying Writ of Possession authorizing the Sheriff to act was stayed on January 22, 2018 by Order of the Appellate Division of the Superior Court of the State of New Jersey. Because there has been no subsequent order by that court or any other court lifting the stay, it is Plaintiff's belief that the stay issued by the Appellate Division was in effect regarding the subject Writ when the Sheriff scheduled the eviction for February 16. Similarly, Plaintiff believes the Appellate Division stay was still in effect when the Sheriff thereafter attempted on the morning of February 16 to execute on the Writ. And, of course, it is Plaintiff's belief presently that the Appellate Division stay is still in effect today – *albeit* unnecessarily, because the Bankruptcy stay under Section 362(a)(2) supersedes all.

20. The Writ of Possession at issue stems from a long and very involved procedural history of litigation originating with a New Jersey mortgage foreclosure proceeding commenced against Plaintiff in 2015. That action resulted in a default judgment against Plaintiff in 2016 and a subsequent sheriff's sale of the property. For numerous reasons, Plaintiff believes both the judgment and the sale were improper and invalid. Those objections were duly preserved and presently are the subject of a pending appeal.

21. Because the property currently is worth well in excess of $2.1 million, Plaintiff's "positive equity" should have been in the hundreds of thousands of dollars, even if the disputed judgment were paid to the penny. However, the property ended up being sold by the Monmouth county Sheriff for less than half the value that had already been established by a certified and current appraisal report. As a result, not only was Plaintiff's positive equity instantaneously extinguished, but Plaintiff also suddenly faced potential tax liability for the "shortfall" between the judgment and the sheriff's sale price, because that amount would be treated by the Internal Revenue Service as a lender write-off, and hence, as *income* to Plaintiff.

22. As stated, Plaintiff's objection to the sale was timely filed and the issues presently are either being litigated or appealed in several separate forums. At stake, obviously, are Plaintiff's substantial financial interests, as well as the question now of his solvency, both of which Plaintiff believes will turn in decidedly on what ultimately happens in respect of the challenged judgment and sheriff's sale.

23. Yet, it was really the relentless attempts by Defendant in the wake of the sheriff's sale to take possession of the property notwithstanding Plaintiff's appeal, as well as

notwithstanding other arguments being made in separate litigation springing from the foreclosure, that forced Plaintiff into having to file a Chapter 13 Petition on an emergency basis on February 16. By no more than 90 minutes at most, that filing occurred just ahead of a lockout by the Monmouth County Sheriff.

24. Upon information and belief, at 11:30 am on February 16, the Sheriff was staged already at the front door to the property. The Sheriff went there even after having already learned of the Chapter 13 filing. Ironically, it was not the Bankruptcy stay that ultimately caused the Sheriff to withdraw, but rather, a call from elsewhere to the Defendant's attorney directing the Sheriff to do so. That call was made by a state superior court judge in Monmouth County.

25. The financial threat to Plaintiff posed by imminent seizure of the property is made clear by the several claims that Plaintiff and Plaintiff's wife, in separate litigation, have stated with factual and legal support too detailed to repeat at length in this Complaint. These claims are simply summarized for purposes herein as follows:

(a) The judgment originally entered by the state court was fatally defective and invalid, because the lender failed to serve or notify Plaintiff's wife of the foreclosure proceedings at any stage thereof – thus the proceedings that were carried on in her absence and without her knowledge were a violation of due process to the extent that the resulting judgment purports to impair a statutorily created right of joint possession held by Plaintiff's wife under N.J.S.A. 3B:28-3;

(b) On the facts surrounding the underlying mortgage loan, the rights of Plaintiff's wife are superior to the lender's rights; thus, whatever the merits of the foreclosure and judgment, the lender in this case had no right to force a sale of the property in disregard of Plaintiff's wife's joint possessory interest;

(c) The scheduling of a sheriff's sale following the judgment was improper, not only because of the aforementioned rights held by Plaintiff's wife, but also because the borrower (i.e., Plaintiff) had in place a binding loan reinstatement offer from the lender, and would have successfully concluded a reinstatement of the loan, thus extinguishing the judgment, or alternatively, would have satisfied the judgment debt in its entirety, but for his having been prevented from doing so, solely by reason either of the lender's gross mistakes or else by acts of purposeful fraud and deception by the lender;

(d) The resulting sale was improper and invalid moreover for want of adequate or even marginally serious consideration having been paid at the sale; and

(e) The sham manner in which, upon information and belief, the sheriff's sale was conducted resulted for Plaintiff in: (a) a loss of positive equity, which in turn, adversely impacted the total amount of his available assets; and (b) creation of an enormous tax exposure, which, in turn, adversely impacted the total amount of his outstanding debts.

26. For the above reasons, as well as others, Plaintiff has attempted aggressively to protect his rights in respect of the property, including title, possessory and all other interests, both legal in nature and as they may arise in equity, and has sought to take every legal step available in doing so. At every stage, Plaintiff has filed timely objections to the taking of his property and moreover has preserved his right of challenge through timely appeal. In fact, an appeal currently is pending, the result of which, if decided in Plaintiff's favor, may unwind the foreclosure sale, vacate the judgment and nullify the sheriff's deed awarded to Defendant.

27. As a relevant aside, although Defendant previously has complained in several forums about the inequity of his having paid for the property he purchased at the sheriff's sale but not yet having been able to take possession due to what he characterizes as "legal maneuverings," he uniformly neglects to mention in any such complaint that he deposited only 20% at the sale, and did not pay the 80% balance until well after he already had become aware of Plaintiff's objection to the sale and the reasons for the objection.

28. Upon information and belief, Defendant did so as a professional real estate speculator and, in such capacity, he chose to take a calculated business risk – simply in order to "lock in" what he saw as a likely windfall gain in purchasing a $2 million property in a hot market for less than half of what the property was worth.

29. Although, upon information and belief, Defendant was aware of the significant legal uncertainties that surrounded the foreclosure and sale, and, as an experienced real estate investor, he knew, or at least he should have known, of the dangers, for reasons only Defendant can explain, the uncertainties were outweighed by the prospect of a huge potential profit to be made over a relatively short turnaround time.

30. Following a failed attempt by Plaintiff in 2017 before a state court to vacate the default judgment, Plaintiff obtained from the lender a post-judgment offer of loan reinstatement. Importantly, upon such reinstatement, the offer as presented to plaintiff would have resulted in the judgment being vacated, and Plaintiff's mortgage loan being returned to regular performing status.

31. For complex reasons relevant to whether the lender's subsequent actions, and as well as various events put in motion by the lender, were valid or binding, Plaintiff was unable to reinstate. Accordingly, on May 8, 2017, a sheriff's sale of Plaintiff's property took place, notwithstanding an emergency request by Plaintiff to the state court for a 24 hour stay so that Plaintiff could meet certain last-minute demands that had been imposed by the lender but were incapable of compliance within the time limit. The most unreasonable such demand, among several unreasonable demands made, was the lender's requirement that the reinstatement funds be paid, not by the originally agreed-upon deadline date and time, but by a new and different deadline – one set for 24 hours *earlier*. Incongruously, this new, "earlier by 24 hours" deadline was already expired *before* the demand was even made.

32. Following rejection by the state court of Plaintiff's application to stay the scheduled sale, Plaintiff renewed his application in the form of a formal post-sale objection. This objection was timely filed in accordance with state law and sought to stay the transfer of title to the winning bidder – i.e., Gregory Tencza, the Defendant in this action. In addition to grounds previously raised that the sale was improper due to the fact that Plaintiff had been prevented from reinstating by reason of the lender's impossible last-minute demands, the objection pointed out that the sale was inherently questionable, because the property sold for $942,000, an amount considerably less than half the fair market value of $2.1 million for the property. Notably, the $2.1 million value was supported at the time by a current "land value only" certified appraiser's report.

33. The significance of a "land value only," appraisal was explained to the state court as meaning that the lender, as well as any prospective sheriff's sale buyer, would have known the true value of the property merely by checking the lot and block numbers, since the structure, and its interior condition, were meaningless to a determination of the property value, and thus a buyer would take no risk in bidding, other than a market risk, if any. Because the chances of

market risk were minimal, given what at the time was (and still to this day remains) a scene of sharply rising home values in the area, Plaintiff asked the state court to conduct at least a basic inquiry into the facts regarding the sale.

34. Plaintiff's objection was overruled, and thus Plaintiff thereafter took an appeal to the Appellate Division of the New Jersey Superior Court.

35. After filing his appeal. Plaintiff separately commenced an action in federal district court for damages and other relief against the lender and it agents, and against Gregory Tencza – again, the Defendant in this action.

36. Both the state court appeal and the district court action currently are pending. Although the two are related, the appeal and the district court action arise separately from different facts, and have separate and different objectives from one another, as well as, to some extent, different parties too.

37. The appeal ultimately seeks to set aside the sale on grounds of multiple errors by the lower court: (a) In failing to hold a hearing on the facts surrounding the failed reinstatement; (b) In summarily, but erroneously, ruling in the absence of any factual inquiry that there was no enforceable contract for reinstatement between the lender and Plaintiff (i.e., defendant in the appeal); and (c) In refusing for a second time, post-sale, to consider the merits of Plaintiff's reinstatement arguments, as well as his additional argument arising only after the sale, in which Plaintiff asked the court to make inquiry into what Plaintiff believed were the inherently suspect circumstances surrounding the sale and the paltry price obtained for the property.

38. As indicated, the district court action arises separately and seeks different, *albeit* related objectives. In the district court case, Plaintiff seeks damages and other relief on grounds that the lender and its agents engaged in misleading, fraudulent and deceptive debt collection practices violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and other laws.

39. Together, the appeal and the district court action maintain that Plaintiff either was prevented from reinstating in accordance with the lender's prior agreement, due to crucial, but perhaps somehow nevertheless innocent and unintentional mistakes made one after another by the lender's agent, or else was *purposefully* prevented from reinstating by means of a series of deceptive, dishonest and fraudulent debt collection practices employed by the lender, its agent and

others specifically intended to make reinstatement "look" as though it was being genuinely offered – when, in actuality, by playing intricate shell games with the contract terms and moving performance deadlines around like so many football goalposts, the lender was doing everything a fraudster conceivably could dream of to make performance by Plaintiff metaphysically impossible.

40. As stated, Plaintiff took an appeal from the denial of his objection to the sale to the Appellate Division of the New Jersey Superior Court. However, shortly prior to the actual docketing of that appeal, Plaintiff's wife, on her own motion, filed *pro se*, attempted to intervene in the appeal on grounds that her statutory right of joint possession under N.J.S.A. 3B:28-3 (Joint Possession Statute or JPS) was violated by the lender when it failed to serve or notify her in connection with the foreclosure proceedings. Because, as she claimed, her rights under the JPS based on the facts of the case, were superior to the rights of the lender, the failure of notice was prejudicial. Specifically, Plaintiff's wife stated that because the action proceeded in her absence to a judgment, and then ultimately to a sheriff's sale, also without notice to her, her statutory right of joint possession had, by definition, been invaded and destroyed without due process.

41. The Appellate Division rejected Plaintiff's wife's application procedurally, because, at the time she filed, there wasn't as yet an appeal on file by Plaintiff to which her application could attach. Nevertheless, in filing, Plaintiff's wife served counsel for the Defendant as an interested party, thus putting Defendant on actual notice her JPS claim.

42. Following the docketing of Plaintiff's state court appeal, Defendant in August of 2018 initiated a separate state court eviction proceeding against Plaintiff. In his application therein for a Writ of Possession, Defendant for unknown reasons affirmed in writing under oath that Plaintiff was a "squatter" on the premises and that Defendant had no idea how Plaintiff came to occupy same – this notwithstanding a prior in person court appearance by Defendant with Plaintiff, and further despite Defendant's possession of a sheriff's deed transferring title from Plaintiff, by name, to Defendant. Moreover, for reasons equally inexplicable, Defendant in suing for possession, neglected to name, serve, notify or even mention to the state court Plaintiff's wife or her claim under the JPS.

43. Litigation in the eviction proceeding ultimately resulted in the state court's issuance of the sought-after Writ on November 3, 2017. Following rejection of Plaintiff's subsequent requests to the Appellate Division and the New Jersey Supreme Court, respectively, for a stay of

that Writ, an eviction was scheduled at the request of Defendant's counsel by the Monmouth County Sheriff for January 22, 2018.

44. On November 21, 2017, Plaintiff's wife filed a civil action, *pro se*, in federal district court seeking, among several claims for relief, a declaration of her JPS rights. Named in the action were the lender and its agents, and Defendant Tencza. On January 30 2018, before any defendant had answered or moved for summary judgment, Plaintiff's wife voluntarily dismissed the action without prejudice under Rule 41 of the Federal Rules of Civil Procedure.

45. On December 11, 2017, Plaintiff's wife moved by counsel to intervene in the state court and requested that the November 3, 2017 Writ of possession be vacated on grounds of her JPS claim and Defendant's failure to name or give notice to her in connection with his application to take possession of the property – this despite his actual foreknowledge of the JPS claim.

46. In an odd sequence of subsequent events, the state court judge before whom the matter originally had been pending transferred the case to a new judge. The new judge thereupon adjourned the matter, which originally had been given a scheduled January 12 return date, to January 23. This date significantly coincided with the Sheriff's scheduled date of eviction.

47. On January 22, i.e., a day before the motion return date had arrived, counsel for Plaintiff's wife advised Plaintiff he had just learned that the newly assigned judge had already decided the motion on January 19, 2018, and that his ruling was against the intervenor. Plaintiff's wife thereupon took an immediate appeal that same day to the Appellate Division. Again, on the same day, i.e., January 22, the Appellate Division, upon receipt of Plaintiff's wife's application, issued a stay of eviction *"until further order"* of the court. This stay was the same as the stay above-referenced by Plaintiff, i.e., the stay that, to Plaintiff's knowledge, has never been lifted. As a result of that Appellate Division stay, the scheduled January 23 eviction was cancelled.

48. Additionally unusual about the matter was the fact that counsel for Plaintiff's wife mistakenly, but understandably in the circumstances (discussed below), believed when he filed the appeal that the lower state court's order dated January 19 was the only memorialization of that court's decision. The order, which was cryptic, stated that Plaintiff's wife's motion to

intervene was being denied. The order then stated that Plaintiff's wife's claim under the JPS had already been "extinguished" by prior court rulings. The court did not identify the rulings. Significantly, there had been no such rulings by any court on the JPS claim, principally because Plaintiff's wife had never been served or notified either of the lender's foreclosure or of the Defendant's later application to take possession. Accordingly, there hadn't been any opportunity for Plaintiff's wife to assert her JPS rights in those proceedings or any other, much less had any court purported to consider or adjudicate those rights *sua sponte* in her absence.

49. As it turned out, the order entered by the court was not the only document evidencing the court's ruling on the matter. The state court judge also rendered a lengthy oral opinion on the motion. This opinion evidently was dictated by the judge in audio recording form, which, later on, the Appellate Division referred to as the *"smart courts"* system. However, according to Plaintiff's wife's counsel, no mention of the opinion was made when Plaintiff's wife's counsel called the court to inquire about the January 23 hearing, at which time he said he was informed only that the motion was not on the calendar, because it had already been decided by the judge on January 19. In subsequently briefing the appeal, Plaintiff's wife's counsel made no mention of the court's opinion – the existence of which, as he later explained, he was wholly unaware.

50. On January 25, 2018, the Appellate Division ruled. Referencing its reliance on the lower court's verbal findings as the appellate court said were embodied on the *"smart courts"* audiotape system, the Appellate Division rejected Plaintiff's wife's arguments.

51. In its ruling, the Appellate Division made no mention of the stay – which, as Plaintiff understood, was intended by its original wording to remain in place until *"further order."*

52. Plaintiff's wife immediately took a further appeal by *emergent motion* to the New Jersey Supreme Court on the same day (i.e., January 25), pointing out the fact that counsel earlier had been unaware of the audio tape and, as such, had filed a brief that apparently didn't addressed certain findings made by the lower court, because those findings were not contained in the court's brief order – i.e., the only ruling on the matter of which counsel had been aware (since, again, there had been no hearing).

53. On January 26, 2018 the Supreme Court denied Plaintiff's wife's application, but the denial was not on the merits. Rather, the court stated that the application was not *"emergent"* in

nature. As such, said the court, Plaintiff's wife had leave to file a regular motion with the court to be decided in the ordinary course.

54. Plaintiff's wife complied. filing her revised application to the Supreme Court as a "regular motion" on February 16, 2018. Because Plaintiff's wife's counsel had wished, in light of the Supreme Court's view that the application was *non-emergent* in nature, to have a certified transcript of the lower court's oral decision for purposes of the application, and because the transcript was not immediately available (and in fact was not yet even available on February 16), counsel stated that he delayed filing of the revised application for as long as possible.

55. Counsel for Plaintiff's wife has stated that he believed (as Plaintiff similarly believes) the Appellate Division stay was still in place – especially since the Supreme Court had indicated there was no emergency in filing. However, having no physical confirmation of that fact in hand, counsel indicated that he ultimately felt compelled to file the motion without the transcript because, as he by then was aware, the Monmouth County Sheriff had an eviction rescheduled for that day, i.e., February 16.

56. Upon information and belief, the rescheduled eviction was set for February 16 at the request of Defendant's counsel. Calls to the Sheriff's office to remind the Sheriff of the Appellate Division's January 22, 2018 stay were answered with the statement that the Sheriff did not interpret the Appellate Division stay as still being in effect. Accordingly, said the Sheriff's office, the eviction would proceed.

57. On the morning of February 16, 2018, at approximately 9:30 am, Plaintiff filed his Chapter 13 Petition on an emergency basis. Thereupon, a copy of the Notice of Filing immediately was faxed to the Monmouth County Sheriff and sent electronically as well to counsel for Defendant Tencza. The Sheriff in turn advised at or around 10:00 or 10:30 am that, in the "County's" opinion, the stay under section 362(a) did not apply and thus, accordingly, the eviction would proceed at 11:30 am.

58. Moments later, by emergent motion for an Order to Show Cause, presented *ex parte*, Plaintiff appeared by counsel before the same state court judge who originally had denied Plaintiff's wife's application for a stay of the Writ. Upon hearing from counsel that a Chapter 13 Petition had been filed, as well upon hearing that a motion by Plaintiff's wife seeking review of the court's earlier denial of a stay presently was pending before the Supreme Court, the judge

telephoned Defendant's counsel, Andrew Sobel, Esq., from the Bench. The court apparently reached Mr. Sobel as he was sitting outside of Plaintiff's home with Sheriff's deputies, local police, a locksmith and a moving van, awaiting start of the eviction.

59. The judge ordered Mr. Sobel to cease immediately and directed all parties to appear before the court that same day at 3:00 pm. At the 3:00 pm hearing, Mr. Sobel appeared, and argued to the court that the stay under Section 362(a)(2) was inapplicable and that the superior court retained jurisdiction, and accordingly requested that the temporary stay imposed by the court on the telephone that morning be lifted so that the eviction could resume.

60. After hearing arguments from both sides, the court reserved decision and recessed without disturbing the stay that had been issued by telephone earlier in the day.

61. On January 22, 2018, Plaintiff learned that the state court on February 21, 2018 issued a one sentence order reading as follows: *"[T]his court lacks jurisdiction[. F]iling of bankruptcy stays eviction[.]"* According to the form of the order, apparently there a decision is on the record. So far, however, Plaintiff is unaware of the contents of that decision, and is in the process of attempting to find out if the decision is written or, again, orally recorded.

62. By email on February 22, 2018, Plaintiff provided a copy of the February 21 Order to Mr. Sobel as counsel for Defendant, and to the Sheriff's Office, requesting that each recipient govern himself accordingly. Plaintiff as yet has received no response from either person. Because of the history above recited, along with Defendant's past-demonstrated determination to take possession, if possible, irrespective of any stay order, this action accordingly ensued.

## CAUSE OF ACTION SEEKING INJUNCTION AGAINST DEFENDANT AND HIS ATTORNEY UNDER PENALTY OF CIVIL CONTEMPT FOR VIOLATION

63. For the reasons set forth in paragraphs 1 through 62 of this Complaint, Plaintiff respectfully requests issuance by this Court of an injunction, under penalty of civil contempt for violation, directing Defendant, his attorney, Andrew Sobel, Esq., and all persons and entities acting on Defendant's behalf, to immediately cease and desist from any and all efforts or attempts to execute on the November 3, 2017 Writ of Possession, as well as from actions of any

nature otherwise having as their goal the taking of possession of the property located at 314 Atlantic Avenue, Spring Lake, NJ 07762.

64. Defendant's argument, if any, in opposition to the stay under Section 362(a)(2), as well as any argument for a lifting of such stay, must be made before this Court and no other court. Violation of the stay accordingly should be punishable as a civil contempt. Moreover, Mr. Sobel, as counsel for Defendant, is charged with knowledge of the same mandate, and any violation of same by him should be subject as well to sanction. Further attempts by either the Defendant or Mr. Sobel to circumvent the stay by reaching out for relief to other court tribunals not only would constitute an offense against this Court's power and exclusive jurisdiction, but also would result in needless expense for Plaintiff in having to deflect those attempts.

65. Although Plaintiff believes it was improper for Defendant and his counsel to take steps to reschedule the eviction in the face of an Appellate Division stay that Plaintiff submits is still in effect, whatever the merits might be of Defendant's arguments to the contrary, as the state court correctly recognized on February 21, 2018, there is no argument that this Court assumed jurisdiction on February 16, 2018 and that, accordingly, any objection defendant may have to the stay under Section 362(a)(2) must be addressed to this Court.

**WHEREFORE,** Plaintiff requests issuance of the injunction sought herein against Defendant and Defendant's counsel, and further requests that said injunction be issued under penalty of civil contempt for violation.

Respectfully,

____________________________ Dated: February 23, 2018

EDWARD G PETRAGLIA
Plaintiff, appearing *pro se*

## VERIFICATION OF COMPLAINT

Complainant Edward G Petraglia, being of lawful age, verifies under penalty of perjury the truth, accuracy and completeness to his personal knowledge of the allegations and statements contained in the above Complaint, except as to allegations and statements made upon information and belief. As to those allegations and statements, Complainant believes them to be true to the best of his knowledge. Complainant is aware that if any allegation or statement contained herein is false, he will be subject to punishment under the law.

Sworn To: February 23, 2018

______________________________

EDWARD G PETRAGLIA

Complainant

B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>**Edward G Petraglia (Debtor)** | **DEFENDANTS**<br>**Gregory J Tencza, 85 Rumson Rd., Rumson, NJ 07760** |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>(Plaintiff pro se) 314 Atlantic Avenue, Spring Lake, NJ 07762 (Tel: 732-359-6544) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>X Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>X Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint seeks injunction against Defendant to cease and desist violations of 11 USC §362(a)(2). Defendant is sheriff's sale purchaser of Plaintiff's property in foreclosure. Despite actual knowledge of Plaintiff's Chapter 13 filing, Defendant continues to seek possession of property through sheriff's eviction and has requested state court to disregard the automatic stay as being inapplicable, rather than move, if entitled. for relief before the Bankruptcy Court.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☒ 71-Injunctive relief – imposition of stay
72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ N/A |

Other Relief Sought

Injunction.

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Edward G Petraglia | BANKRUPTCY CASE NO.<br>18-13057 | |
| DISTRICT IN WHICH CASE IS PENDING<br>New Jersey | DIVISION OFFICE<br>Trenton | NAME OF JUDGE<br>Ferguson, Ch. J. |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>February 23, 2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Edward Petraglia (Debtor/Plaintiff pro se) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.